United States Bankruptcy Court
for the District of New Jersey

In re: Motions to Remand Removed State Court Talc Actions

Proposed Findings of Fact and Conclusions of Law

      Beginning in April 2019, Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively "J&J") has removed hundreds of talc claims pending against it in the Superior Court in New Jersey to the United States Court for the District of New Jersey. Judge Wolfson, Chief Judge of the United States District Court for the District of New Jersey, referred the cases to the bankruptcy court. Before this court today are 239 motions[1] to remand filed on behalf of various plaintiffs in the state court talc litigation. The court has considered the plaintiffs' motion papers, J&J's opposition, and the plaintiffs' responses.[2]

Request to abstain from ruling on remand motions

      J&J asks this court, in the interest of judicial economy and comity, to abstain from addressing the issue of remand so the United States Court for the District of Delaware can first rule on J&J's motion pursuant to 28 U.S.C. 157(b)(5) to fix venue in Delaware. J&J acknowledges that "several"[3] federal courts around the country have declined to defer ruling, and have remanded certain removed talc cases back to state court, but argue that those rulings "rely primarily on equitable considerations" that "are outweighed by equitable treatment of all Debtors' mass tort and other creditors, efficient administration of the Debtors' estates, and preservation of judicial resources."[4] The preservation of judicial resources argument is risible given that J&J's removals have resulted in significant additional expenditure of judicial resources in both the federal and state courts. The first two arguments, if they have any validity, are arguments more appropriately made by the Creditors Committee in the Imerys bankruptcy case, which the court notes has not taken any position on these remand motions nor has it filed support for J&J's venue motion.

      J&J also contends that the best chance for all plaintiffs (not just those with current trial dates) for an adjudication of their claims while they are still alive is to allow the cases to go to the District of Delaware because that court has more resources at its disposal and can do things such as holding general causation

---

[1] Some of the motions to remand have been filed as omnibus motions. *See, e.g., Aparicio v. Johnson & Johnson* [19-1205]
[2] Some of the plaintiffs have filed omnibus responses. *See, e.g., Clark v. Cyprus Amax Minerals Co.* [19-1202]
[3] As of last week, it was more than 400 cases.
[4] Memorandum of Law in Opposition to Plaintiffs Motion to Remand at FN 3

hearings, setting bellwether trials, and even remanding cases to federal venues around the country for expedited trials if appropriate. The first two arguments are particularly unpersuasive given that the courts in New Jersey have employed those and similar tactics to expeditiously address the talc cases. And a further remand back to other federal courts after the cases are consolidated in Delaware seems singularly inefficient and would, in all likelihood, make it less likely that plaintiffs would get their day in court.

Further, this court believes that granting J&J's request to indefinitely hold the remand motions in abeyance should be preceded by a finding of federal jurisdiction because such an action impacts the rights of the plaintiffs. As noted by one court: "the interplay between sections 157(b)(5) and 1452 does not give this court a sound legal reason to delay a jurisdictional inquiry under section 1452, especially where such a delay would likely operate to the prejudice of the state court plaintiff."[5]

On May 14, when J&J argued the first four remand motions before this court, its counsel insisted that a decision from the Delaware District Court would be imminent because the briefing was scheduled to be completed by May 23, 2019.[6] That prediction proved to be wrong. As of the date of this opinion, Judge Noreika has not ruled on the venue motion. Even if she had, that does not mean that any of the talc plaintiffs would shortly get their day in court. As predicted by one court, if the venue motion is granted "[r]esolution or trial of their claims will be delayed by months or even years."[7] That court also noted that waiting to decide these remand motions "would only reward Johnson & Johnson's unabashed attempt at further delaying the resolution of hundreds of [] plaintiffs' claims."[8] J&J also argues that the inconsistent remand decisions by the federal courts these cases have been removed to underscores the importance of deferring to the Delaware District Court. Quite to the contrary, this court believes that the consistency issue no longer has vitality given Judge Noreika's denial of the Provisional Transfer Motion.

This court fully respects that 28 U.S.C. 157(b)(5) vests Judge Noreika with the sole authority to determine venue, but that does not divest this court of the authority to decide the remand motions; Judge Noreika acknowledged that in her opinion denying the Provisional Remand Motion. As Judge McMahon noted when

---

[5] *Holman v. Johnson & Johnson*, May 22, 2019 Memorandum Opinion at 4, J. Thorne (United States Bankruptcy Court for the Northern District of Illinois Eastern Division) [19-0645]

[6] Judge Noreika subsequently permitted sur-reply briefs to be submitted by June 4, 2019

[7] *In re: Removed State Court Talc Actions*, 2019 WL 2191808 (C.D. Cal. May 21, 2019)

[8] *Id.* at *4

remanding cases in California: "should [Judge Noreika] chose to grant J&J's motion [to fix venue], the claims will be transferred regardless of whether they are in state or federal court."[9] J&J argues that the ability of the court vested with authority to determine venue to sweep remanded cases back is exactly how the statute was intended to work. If so, then other courts proceeding with remand pending a venue determination is exactly how the statute was intended to work too.

For all of these reasons, the court declines to hold these motions in abeyance pending the outcome of the section 157(b)(5) venue motion in Delaware.

"Related to" Jurisdiction

J&J removed the state court talc cases under the bankruptcy removal provisions of 28 U.S.C. § 1452. Under that statute, a party "may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claims or cause of action under section 1334 of this title."[10] Although J&J is not in a bankruptcy proceeding, it is claiming "related to"[11] jurisdiction under section 1334(b) because of the bankruptcy filing of Imerys Talc America, Inc., one of its talc suppliers.[12]

In a recent thorough and cogent analysis of the "related to" jurisdiction issue, Judge Thorne of the Bankruptcy Court for the Northern District of Illinois found that there was no federal jurisdiction over the state law talc claims. Although Judge Thorne's analysis was based on Seventh Circuit law, she noted that even "in the Third Circuit it would likely be improper to base "related to" jurisdiction on shared insurance without evidence as to the precise terms and scope of the shared

---

[9] *Id.* The proposed order J&J submitted on its Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b) provides in paragraph 3 that it applies to "all Talc Claims now pending in any federal district court, subsequently removed to any federal district court, *or subsequently remanded to any state court during the pendency of the Debtors' chapter 11 cases, shall be transferred to this Court for all purposes.*" (emphasis added)

[10] 28 U.S.C. § 1452(a)

[11] 28 U.S.C § 1334(b) grants original jurisdiction to the district court of "all civil proceedings arising under title 11, or arising in or **related to** cases under title 11." (emphasis added)

[12] In February 2019, Imerys Talc America, Inc. and two of its affiliates, Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc., filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware. The cases have been consolidated.

insurance policies at issue."[13]  Similarly, Chief Judge Wolfson found that "there is a serious question as to the propriety of the "related-to" jurisdiction asserted by J&J."[14] Two courts in this District, applying Third Circuit law, have ruled against J&J on the jurisdiction issue.[15] In *Kaufman*, the court relied on the fact that J&J had not yet asserted any claims in the Imerys bankruptcy and the fact that neither Imerys nor its affiliates were named as defendants in the case. In *Kleiner*, the court found that possible indemnification is not a basis for federal jurisdiction because J&J and Imerys have not agreed to automatic indemnification and that counsel's assurance that there was shared insurance was an insufficient basis upon which to find jurisdiction.

This analysis of "related to" jurisdiction is more than sufficient for these purposes because even if J&J could sustain its burden of demonstrating that federal jurisdiction was proper, this court would still recommend remand of the talc claims under section 1452(b).

Equitable Remand

Equitable remand is provided for in 28 U.S.C. § 1452(b), which states that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." In assessing whether to remand a case under 28 U.S.C. § 1452(b), courts consider a similar set of factors as when deciding whether to permissively abstain.[16] Courts in this jurisdiction consider the following non-exclusive factors:

1) the effect on the efficient administration of the bankruptcy estate;
2) the extent to which issues of state law predominate;
3) whether judicial economy would be served by remand;
4) whether the proceedings involve non-debtors;
5) the difficulty or unsettled nature of the applicable state law;
6) comity;
7) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
8) the existence of the right to a jury trial; and

---

[13] *Holman v. Johnson & Johnson*, May 22, 2019 Memorandum Opinion at 8, J. Thorne (United States Bankruptcy Court for the Northern District of Illinois Eastern Division) [19-0645]

[14] June 18, 2019 Letter Order at 5

[15] *Kleiner v. Rite Aid Corp.*, 2019 WL 2462967 (E.D. Pa. June 11, 2019) (finding that Johnson & Johnson had not shown "related to" jurisdiction over the talc products liability case); *Kaufman v. Johnson & Johnson*, 2019 WL 2297556 (W.D. Pa. May 30, 2019) (same)

[16] KeyBank Nat'l Ass'n v. Franklin Advisers, Inc., 600 B.R. 214 (S.D.N.Y. 2019) (quoting *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004))

9) prejudice to the involuntarily removed defendants.[17]

It has been observed that "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative."[18] Further, "not all the factors necessarily need to be considered."[19] Viewed together, section 1452(b)'s equitable remand provision and section 1334(c)(1)'s permissive abstention provision "strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court."[20]

The cases that are before the court today are not all factually and procedurally identical. For example, the cases removed from Atlantic County had been stayed awaiting the outcome of certain appeals.[21] At the time of removal, some of the Middlesex County cases had trial ready dates and others did not. In some cases, Imerys is not even a named defendant.[22] Some of the cases involve ovarian cancer and others involve mesothelioma or related injuries. But, after careful review of the individual cases, the court finds that from an equitable remand perspective the similarities outweigh the differences, making a global consideration of the remand motions appropriate.

In Judge Wolfson's *de novo* review of this court's previous recommendation to remand four cases, she primarily focused on two factors: the predominance of state law issues and prejudice.[23] Applying just those two factors to the cases before the court today, the record here strongly weighs in favor of granting equitable remand. In all of these cases, state law is the only basis for the claims. Additionally, the state law at issue is neither difficult nor unsettled, and, even if it were, J&J has offered no justification for why this court (or the Delaware District Court) would be better suited to resolving it.

---

[17] *In re Donington, Karcher,* 194 B.R. 750, 756-59 (Bankr. D.N.J. 1996); *see also, In re D'Angelo,* 491 B.R. 395 (E.D. Pa. 2013)

[18] *Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011)

[19] Monmouth Investor, LLC v. Saker, 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010)

[20] *Union Oil Co. of California v. Shaffer*, 563 B.R. 191, 201 (E.D. La. 2016) (internal citations omitted)

[21] The court has been advised that the Atlantic County cases have been stayed since 2016 when plaintiffs took an appeal of the summary judgment decision in the *Carl* and *Balderrama* cases (bellweather cases).

[22] Although J&J argues that the fact that Imerys is not a defendant in some of the actions has no bearing on the jurisdiction question.

[23] On June 18, 2019, Judge Wolfson entered a letter order adopting this court's May 14, 2019 report and recommendation.

Turning to prejudice, which Judge Wolfson noted is one of the most important factors, it is evident that the prejudice to the plaintiffs if the motions are denied far outweigh any possible prejudice to J&J if the motions are granted. All of these plaintiffs are gravely ill and while some may be in more precarious health than others, none of them should be forced to gamble on the possibility of trial being expeditiously scheduled in another forum. These cases have been pending for varying amounts of time, but many have been pending in their respective courts for multiple years and the courts in Middlesex and Atlantic County have procedures in place to address this mult-county litigation. Thus, comity favors remand. Moving these cases to another venue will almost inevitably slow the proceedings. J&J has not pointed to any concrete way it will be prejudiced other than a desire to achieve equitable treatment for all of the mass tort plaintiffs. It has been litigating these cases in the state courts in New Jersey for years and presumably is fully capable of continuing to do so. If J&J is overwhelmed by the mass tort litigation it is not foreclosed from filing its own bankruptcy case.

At this moment, the court cannot properly evaluate the effect of remand on the administration of the bankruptcy case or meaningfully assess the degree of relatedness to the Imerys bankruptcy because as of the last time the court checked J&J had not even filed a proof of claim in the Imerys bankruptcy case, so J&J is not even a creditor in the bankruptcy case. Even if a claim is filed, the degree of relatedness does not appear strong because it is based on an indemnification provision the effectiveness of which has not been established. It also involves claims to shared insurance that have not been established.

A court may also consider whether the proceeding involves non-debtors. These state court talc cases are not single party cases and some involve solely non-debtors and others involve predominately non-debtors. Another equitable remand factor a court may considered is the likelihood that the cases were removed because of forum shopping.[24] The timing of the filing of these removal notices is highly suspect given that several of these cases were on the eve of trial. As Judge Carney noted when remanding forty-two cases back to the state court, J&J's removal of the cases was an "unabashed attempt at further delaying the resolution of hundreds of California plaintiffs' claims."[25] Additionally, the necessity of removing the Atlantic County cases is questionable given that those cases were already stayed.

On the whole, the bulk of the factors favor granting equitable remand.

Additional matters

---

[24] KeyBank Nat'l Ass'n v. Franklin Advisers, Inc., 600 B.R. 214, 226 (S.D.N.Y. Mar. 26, 2019) (quoting Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004))
[25] In re: Removed State Court Talc Actions, 2019 WL 2191808 at *4 (C.D. Cal. May 21, 2019)

A few other issues need to be addressed. In certain cases[26], J&J has filed a letter that notes that the plaintiff is deceased and that the caption of the complaint has not been amended. The letter states that the "case should be dismissed, or at the very least, the Court should stay ruling on the motion to remand until the transfer motion in the District of Delaware is decided." First, this court takes no substantive action based on a letter. If J&J seeks relief from this court it must do so in a motion that complies with this court's Local Rules. Second, it appears that J&J's request for dismissal may be premature. Federal Rule of Bankruptcy Procedure 7025, which incorporates Federal Rule of Civil Procedure 25, provides that if a party dies a motion may be made for substitution of the proper party "within 90 days after service of a statement noting the death."[27] Finally, J&J offers no factual or legal support for its position that a need to amend a caption to substitute in a party is a reason to stay ruling on the motion to remand. The caption in these cases can be amended, and a proper party substituted in, under the state court procedures as well as federal.

Certain plaintiffs[28] argue that the removal itself was a violation of the automatic stay in the Imerys bankruptcy. The court disagrees. The Notice of Removal filed in these cases sought to remove *only* the claims against J&J. Unless a motion for relief is granted in the Imerys bankruptcy case, the claims against the Debtors cannot be removed to federal court without violating 11 U.S.C. § 362.

Certain plaintiffs raise the issue of whether mandatory abstention is appropriate and whether J&J has complied with the proper time limits in removing the state law claims to this court. Because this court has found that equitable remand is warranted, the court does not reach the merits of those contentions.

## Conclusion

The court recommends that all of the removed talc cases be remanded to the state court pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b). A copy of these Proposed Findings of Fact and Conclusions of Law will be docketed and that will be deemed service on the parties in accordance with Fed. R. Bankr. P. 9033(a). This opinion will be adopted, without oral argument, in the remand motions pending before this court on July 16 and 23, unless, no later than 7 days prior to the hearing date, a party requests in writing an opportunity to present oral argument.

---

[26] *See, e.g., Lopez v. Johnson & Johnson* [19-1603]
[27] Fed. R. Civ. P. 25(a)(1)
[28] *See, e.g., Hegde v. J&J* [19-1691]